## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ALEXA ROBERTS**, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | CLASS ACTION COMPLAINT |
| **ONE OFF HOSPITALITY GROUP, LTD.**, **PAUL KAHAN**, **DONNIE MADIA**, and **EDUARD SEITAN** | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) ) | |

### CLASS ACTION COMPLAINT

Plaintiff ALEXA ROBERTS, on behalf of herself and all other similarly situated individuals ("Plaintiff"), by and through her attorneys, brings this Class Action Complaint against Defendants One Off Hospitality Group, Ltd., Paul Kahan, Donnie Madia, and Eduard Seitan (collectively "Defendants") and alleges the following:

### INTRODUCTION

1.      This is an individual, class, and collective action brought to remedy Defendants' widespread violations of state and federal law, which have deprived Plaintiff along with other similarly situated individuals of wages and overtime compensation to which they are entitled. Defendants are the employers and/or joint employers of Plaintiff and hundreds of other employees who work for Defendants as hosts, waiters, bus staff, cooks, bartenders, barbacks and other related hourly restaurant employees in three years preceding this the filing of this Complaint (the "Class").

1

Defendants failed to pay their employees for any time worked in excess of their scheduled shift, to avoid additional labor costs during the relevant time period. Indeed, Defendants forced individuals to clock in after they had already been working for hours or stay after clocking out and continue to work.

2.      Defendants' willful, knowing, and/or reckless action of intentionally under-reporting the number of hours actually worked by their employees denied these employees of wages and overtime compensation. As a result, this civil action is brought by the above-named plaintiff who brings this collective action claim for overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") pursuant to 29 U.S.C. § 216(b) and class action claims for violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILL. COMP. STAT. § 105/1 *et seq.* and Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILL. COMP. STAT. 115/1 *et seq.* pursuant to FED. R. CIV. PRO. 23.

3.      The IMWL generally requires that employers to pay employees for all hours worked at the requisite minimum wage. Additionally, under the FLSA, the IMWL, and other state wage laws, there is a general rule that employees must be compensated at a rate of one and a half (1 ½) times their regular rate of pay for all hours worked in excess forty (40) hours a week. Here, Plaintiff and other members of the Class were not paid for each hour that they worked, nor were they paid overtime premiums for hours worked in excess of forty (40) hours a week. Despite these statutory requirements, Defendants required that their employees work without any overtime pay whatsoever and did not compensate for their employees for all hours worked.

4.      Similarly, the IWPCA requires that employers pay employees, at least semi-monthly, as provided by their employment contract or agreement. The IWPCA further requires employers to pay final compensation, including all wages due, to employees at the time of their

separation or at least no later than their next regularly scheduled payday. Defendants violate the IWPCA by filing to compensate their employees according to their agreement and in the time required by the statute.

## PARTIES

5.      Plaintiff, Alexa Roberts, at all times relevant, was a resident and citizen of Illinois. She was formerly employed by Defendants as a bartender in Chicago, Illinois from 2017 to until July 2020. She was hired, Defendants agreed that Plaintiff Roberts would be paid $11.00 per hour worked, reduced with a tip credit. These rates would eventually be increased to $13.50 per hour worked, reduced with a tip credit.

6.      Plaintiff Roberts worked as a bartender at the Defendant's Blackbird and Avec restaurants. Plaintiff Roberts regularly worked five days a week, including approximately two double shifts per week. Plaintiff Roberts regularly worked more than forty (40) hours a week.

7.      As part of her job duties, Plaintiff Roberts had to prepare for her shifts by making the various juices, mixers, and cut fruit that would be required for Defendants' drinks (among other tasks). This would take Plaintiff Roberts an hour or more before her scheduled shift to complete. Additionally, Plaintiff Roberts was also told to complete various cleaning and closing tasks after her scheduled shift ended.

8.      After she was hired, Plaintiff Roberts came to understand that it was Defendants' policy not to allow employees to report any overtime. She was instructed by Defendants and their management team to clock in at the beginning and out at the end of her scheduled shift to avoid any additional labor costs, regardless of the time that she actually worked. Defendants and their management team knew that additional off-the-clock work required of their employees, outside their scheduled hours, to complete their assigned tasks. Nonetheless, Defendants and their

3

management team required employees to complete these assigned work task anyways, without pay. Defendants and their management team knew that they were not paying their employees for all hours worked, expressly instructing employees to clock out and continue working.

9.    Indeed, those times that Plaintiff Roberts did record and was paid for her overtime hours, she was reprimanded by Defendants and their management team for violating their internal employment policies. In furtherance of Defendants' policy of not paying employees for overtime, Plaintiff Roberts was once provided a gift card to Defendants' restaurants in lieu of overtime pay.

10.   Accordingly, Plaintiff Roberts was not paid for each hour she worked and was not paid overtime premiums during her employment with Defendants. Additionally, Plaintiff Roberts was not paid in accordance with her employment agreement with Defendants.

11.   Plaintiff Roberts signed a consent form to join this collective action lawsuit.

12.   Defendant One Off Hospitality Group, Ltd., is an Illinois corporation with its principle place of business in Chicago, Illinois. During the relevant time period, Defendant One Off Hospitality Group, Ltd. owned and operated the Publican, Publican Quality Meats, Big Star, the Violet Hour, and Blackbird Restaurants.

13.   Defendant Paul Kahan is the executive chef and a partner of Defendant One Off Hospitality Group, Ltd.

14.   Defendant Donnie Madia is a managing partner of Defendant One Off Hospitality Group, Ltd.

15.   Defendant Eduard Seitan is a managing partner of Defendant One Off Hospitality Group, Ltd.

**JURISDICTION AND VENUE**

16.   This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to

4

29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

17.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

18.    This Court has personal jurisdiction over Defendants because Defendants conducted business in this State, had systematic and continuous ties with this State, and had agents and representatives in this State.  Thus, Defendants have sufficient minimum contacts with or otherwise purposefully avail themselves of the markets in the State of Illinois, or otherwise has sufficient contacts with this District to justify them being fairly brought into court in this District.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d) because Plaintiff and Class members worked and were paid in this District and the obligations, liabilities, and breaches complained of herein arose or occurred in this District.  Defendants own, operate, and/or maintain restaurants, transacts business, employ workers within the District, or otherwise are found within the District.  Defendants are within the jurisdiction of this Court for purpose of service of process.

## JOINT EMPLOYER ALLEGATIONS

20.    Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. § 203(d).

21.    The definition of "employer" under the FLSA is not limited by the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.  *Real v. Driscoll Strawberry Assocs.,* 603 F.2d 748, 754 (9th

Cir. 1979).

22. Congress defined "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n.21 (1985) (same).

23. The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 33 (1961).

24. Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan,* 414 U.S. 190, 195 (1973).

25. All joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a) (1981).

26. Regulations issued by the Department of Labor give the following examples of joint employment situations:

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 .F.R. § 791.2(b) (footnotes omitted).

27. The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate

6

determination must be based "upon the circumstances of the whole activity." *Id.* at 1470 (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947).

28.     Since Illinois courts look to the FLSA to interpret the IMWL, the FLSA's economic reality test also applies to the IMWL. *Cho v. Maru Rest., Inc*., 194 F. Supp. 3d 700, 705 (N.D. Ill. 2016).

29.     Furthermore, IWPCA plainly states that "[a]ny officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILL. COMP. STAT. 115/13. Because the IWPCA, unlike the FLSA, clearly spells out who may be held liable and under what circumstances, there is no need for application of the "economic realities" test. *Andrews v. Kowa Printing Corp*., 217 Ill. 2d 101, 11-12 (2005). Liability, instead, attaches based on an individuals' participation in the actions which violate the IWPCA.

30.     Defendant One Off Hospitality Group, Ltd. owes and controls various entities which operate the Publican, Publican Quality Meats, Big Star, the Violet Hour, and Blackbird Restaurants. These restaurants often share employees. Defendants Paul Kahan, Donnie Madia, and Eduard Seitan, in turn, own and control One Off Hospitality Group, Ltd.

31.     Defendant One Off Hospitality Group, Ltd. controls the hiring of employees at each of its restaurants. Indeed, Defendant One Off Hospitality Group, Ltd. posts job openings and accepts applications for all employees at each of its restaurants through its website, https://www.oneoffhospitality.com/openpositions. Accordingly, Defendant One Off Hospitality Group, Ltd. controls the hiring and placement of employees at each of its restaurants.

32.     Defendants Paul Kahan, Donnie Madia, and Eduard Seitan are active in the management of the Publican, Publican Quality Meats, Big Star, the Violet Hour, and Blackbird

restaurants. Defendants Paul Kahan, Donnie Madia, and Eduard Seitan often are at each location monitoring and directing the work of the employees, are involved in the setting of the work schedules, approving any compensation policies, and overseeing payroll. Plausibly, by Defendants Paul Kahan, Donnie Madia, and Eduard Seitan's exercise of control, input, and responsibility for issuing accurate, legitimate, and proper paychecks for the employees, they meet the test for joint employer.

33.     Defendants Paul Kahan, Donnie Madia, and Eduard Seitan controlled the rate and method of payment for the employees. Likewise, Defendants Paul Kahan, Donnie Madia, and Eduard Seitan controlled and dictated the schedule and job duties of their employees, including when employees would be required to work, when such employees should clock in and out, and for what hour's employees should be compensated. Plausibly, by Defendants Paul Kahan, Donnie Madia, and Eduard Seitan's exercise of control, input, and responsibility for work hours and time clock policies for the employees, they meet the test for joint employer.

34.     Defendants Paul Kahan, Donnie Madia, and Eduard Seitan controlled the training, structure and conditions of employment for Plaintiff and their employees. Specifically, as Defendant One Off Hospitality Group, Ltd.'s Executive Chef, Paul Kahan was responsible for and controlled the food related activities at each of the restaurants. Similarly, Donnie Madia, as partner of Defendant One Off Hospitality Group, Ltd., is regularly involved in the business of each of the restaurants, including payroll and staffing, to ensure that these restaurants are properly managed and profitable. Eduard Seitan, also one of Defendant One Off Hospitality Group, Ltd.'s partners, is a previous manager and head server of Blackbird who now oversees the day to day operations of each of the restaurants. Plausibly, by Defendants Paul Kahan, Donnie Madia, and Eduard Seitan's exercise of control, input, and responsibility for training, structure and conditions of

8

employment for the employees, they meet the test for joint employer.

35.    Collectively, Defendants controlled the hiring and firing of their employees. Specifically, Defendants had the authority to hire and fire employees as they saw fit, and carried out the hiring and firing of employees on a regular basis.  Plausibly, by Defendants' exercise of control, input, and responsibility over the hiring and firing of employees, they meet the test for joint employer.

36.    Regardless of any of the individual criteria for joint employer, Defendants also had complete economic control over the employment relationship.  The "economic reality" was that they employed workers to perform cooking, bartending, waiting and other similar roles for their benefit, and thus they meet the test for joint employer. *Bonnette, supra* at 1470.

37.    The fact that some Defendants may not have exercised each and every aspect of the test for employer under the law, and may have delegated some of the responsibilities to others, does not alter their status as employer; it merely makes them joint employers. *Id.*

38.    Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint.  *Falk, supra;* 29 C.F.R. § 791.2(a).

39.    The well-pleaded facts herein all support Plaintiff's standing to sue each and every Defendant named herein as a joint employer and seek damages for the alleged violations under a joint employment theory.  *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 966 (N.D. Cal. 2017); *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016).

40.    Plaintiff is informed and believe, and allege thereon, that Defendants are jointly and severally responsible for the circumstances alleged herein, and proximately caused the unlawful acts and wage violations complained of herein.

41.    At all times herein mentioned, Defendants approved of, condoned, and/or otherwise

9

ratified each and every one of the acts or omissions complained of herein.

42.     Defendants acted willfully in violating the laws and regulations pleaded in this Complaint.

43.     At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## FACTUAL ALLEGATIONS

44.     According to Defendant One Off Hospitality Group, Ltd.'s website, it has "developed and operated some of Chicago's most beloved places to eat and drink."  The website continues to state that "[m]ore importantly, we're a group of people – chefs, hospitality veterans, managers and creators – who believe in the power of treating our guests like family and our restaurants like home."

45.     Defendants operate the critically acclaimed Publican, Publican Quality Meats, Big Star, the Violet Hour, and Blackbird restaurants.  Like most restaurants, Defendants' locations require cooks, dishwashers, barbacks, bartenders, food runners, servers, and hosts to operate.  Each of these employees are paid on an hourly basis.  Some of Defendants' staff can have their hourly rate offset by a tip credit between five and eight dollars per hour.

46.     Defendants' restaurants often share employees when they are understaffed.  Thus, it is normal for an employee of one restaurant to work for another.  For example, employees will often work an early shift in one of Defendants' restaurant and later shift in another restaurant in the same day.  Defendants' restaurants have common management, employee policies, and compensation practices.  These common policies allow employees to divide their time over multiple restaurants if necessary.

47.     Defendants Paul Kahan, Donnie Madia, and Eduard Seitan, through their control of

Defendant One Off Hospitality Group, Ltd., hires and controls employees at the restaurants. Defendants agree, when Plaintiff and other members of the Class are hired, that these employees would be paid a set hourly rate, which may be reduced by an established tip credit. Defendants further agreed to pay all lawful overtime that is reported. Defendants periodically alter the hourly rates and tip credit for Plaintiff and other members of the Class. However, any amendment of the employment terms are accepted by Plaintiff and other members of the Class through their continued employment.

48. Defendants required its staff to only clock in and out at the beginning and end of their scheduled shifts. Defendants, however, required that employees be prepared to serve customers when the restaurants opened. Accordingly, any additional preparations that were required for service, which could not be completed during the scheduled shift, must be completed off the clock. For example, it was not uncommon for cooks to come in an hour or two before their scheduled shifts to complete kitchen preparations. Front-of-the-house workers similarly had to work before their scheduled shift to prepare the dining room and complete other preparatory tasks. Yet, under Defendants' instructions, Plaintiff and the Class were told not to clock in for this prescheduled work.

49. Similarity, Defendants required its staff to complete a number of required tasks after their restaurants closed. This included mostly cleaning, but would often take longer than the time scheduled. But, again, Defendants would make Plaintiff and the Class clock out at the end of their scheduled shift and continue working. Indeed, it was not uncommon for Defendants to have the cooks' line up and clock out at the end of their shift, just to continue working for another hour.

50. Defendants were aware that their employees were working outside their scheduled

11

shifts, requiring them to do so. The individual Defendants were often present at the restaurants when employees were working off the clock and/or instructed them to do so. Defendants maintained a uniform wage practice of paying Plaintiff and the Class without regard to the true number of hours worked, including overtime hours they worked. As set forth herein, Defendants' uniform policy and practice was to unlawfully and intentionally deny timely payment for all hours worked at the wage required, including the overtime hours worked by the Plaintiff and the Class.

## COLLECTIVE ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> All current and former hourly exempt employees who worked for Defendants at any time within three years of the filing of this complaint.

(hereinafter referred to as the "FLSA Collective"). Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons. Plaintiff reserves the right to amend this definition if necessary.

52.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated employees.

53.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

54.     All of the work that Plaintiff and the FLSA Collective members performed was assigned by Defendants, and/or Defendants were aware of all of the unpaid work that Plaintiff and the FLSA Collective members performed.

55.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members.  This policy and pattern or practice includes, but is not limited to:

      a.  willfully failing to pay its employees, including Plaintiff and the FLSA Collective, for all hours worked including premium overtime wages for all hours worked in excess of forty (40) hours per workweek; and

      b.  willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective, worked for Defendants' benefit.

56.     Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective overtime premiums for all hours worked in excess of forty (40) per workweek.

57.     Defendants failed to properly maintain timekeeping and payroll records pertaining to the FLSA Collective under the FLSA, 29 U.S.C. 211(c).

58.     Defendants' unlawful conduct was widespread, repeated, and consistent.

59.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

60.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated pre-shift preparation time and post-shift closing time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

61. There are many similarly situated current and former employees who were underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

62. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

63. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

64. Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period will include hundreds of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rule 23(b)(3), on her own behalf and on behalf of all similarly situated current and former employees of Defendants who are or were employed at any time in the last three years. Plaintiffs propose the following class definition:

> All current and former hourly exempt employees who worked for Defendants, in Illinois, within three years of the filing of this complaint.

Plaintiff reserves the right to amend the putative class definition if necessary.

66. Plaintiff shares the same interests as the putative class and will be entitled to unpaid compensation, attorneys' fees, and costs and interest owed to them under the Illinois law based on nearly identical factual and legal standards.

67. The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed hundreds of employees throughout Illinois. The Class members are so numerous that joinder of all such persons is impracticable and that the

disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time clock, and payroll records, and from input received from the putative Class members.

68.     The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class. Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

   a.   Whether Defendants maintained a policy or practice of requiring, suffering, or permitting the Class to work off-the-clock without proper compensation under Illinois law;

   b.   Whether Defendants engaged in a policy or practice of failing to pay each Class member regular wages for each non-overtime hour worked.

   c.   Whether Defendants engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

   d.   Whether Defendants paid each Class member at the minimum wage for all hours worked;

   e.   Whether Defendants failed to pay earned wages within thirteen days of the end of the pay period;

   f.   Whether Defendants failed to timely pay all wages and compensation due to each Class member who quit or who was discharged;

g.  whether Defendants violated the IMWL and the IWPCA, and the supporting Illinois Regulations;

h.  whether Defendants employed Plaintiff and the Class within the meaning of the IMWL and the IWPCA; and

i.  Whether Defendants should be required to pay compensatory and statutory damages, attorneys' fees, penalties, costs, and interest for violating Illinois law.

69.   The status of all individuals similarly situated to Plaintiff raises an identical legal question: whether Defendants' workers are entitled to back wages, including overtime.

70.   The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants and performed their job duties without receiving wages, including overtime wages, owed for that work.

71.   The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff and the putative Class members.

72.   The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

73.   The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

74.     Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds of identical actions.  Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.  Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on Behalf of Plaintiff and the FLSA Collective)

75.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

76.     At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

77.     At all relevant times, Plaintiff has been Defendants' "employee" as defined by the FLSA.  29 U.S.C. § 203(e)(1).

78.     Plaintiff and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

79.     Plaintiff was either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

80.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and

all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

81.     At all times relevant to this action, Defendants required Plaintiff and the FLSA Collective members to perform off-the-clock work each shift, but failed to pay these employees the federally mandated overtime compensation for this work. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

82.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

83.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took for their employees to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

84.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**Illinois Minimum Wage Law**
**(Brought on behalf of Plaintiff and the Class)**

85.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

86.     Defendants have engaged in a widespread pattern, policy, and practice of violating the IMWL, 820 ILL. COMP. STAT. 105/1, *et seq.* as detailed in this Complaint.

87.     At all times relevant times hereto, Plaintiff and the Class have been employees of Defendants within the meaning of the IMWL, 820 ILL. COMP. STAT. 105/3(d).

88.     At all times relevant times hereto, Defendants have been the "employer" of Plaintiff and the Class within the meaning of the IMWL, 820 ILL. COMP. STAT. 105/3(c).

89.     At all relevant times, Plaintiff and the Class regularly worked in excess of forty (40) hours in a workweek.

90.     Defendants failed to pay the Plaintiff and the Class the minimum hourly wages to which they are entitled under the IMWL for each hour that they worked.

91.     Furthermore, Defendants failed to pay Plaintiff and the Class the proper overtime wages to which they are entitled under the IMWL, 820 ILL. COMP. STAT. 105/1, *et seq.*

92.     At all relevant times, Defendants regularly and consistently maintained policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

93.     Defendants' violations of the IMWL were knowing and willful. Defendants knew or could have determined how long it took for their employees to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiff and the Class for these work activities, but did not.

94.     Accordingly, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to IMWL as a result of Defendants' failure to pay for all time worked and such premium compensation, as is required

under Illinois law.

**THIRD CAUSE OF ACTION**
**Illinois Wage Payment and Collection Act**
**(Brought on behalf of Plaintiff and the Class)**

95.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96.    Defendants have engaged in a widespread pattern, policy, and practice of violating the IWCPA, 820 ILL. COMP. STAT. 115/1 *et seq*., as detailed in this Complaint.

97.    At all relevant times, Plaintiff and the Class have been "employees" within the meaning of the IWPCA, 820 ILL. COMP. STAT. 115/1, *et. seq*.

98.    At all relevant times, Defendants have been an "employer" of Plaintiff and the Class within the meaning of the IWPCA, 820 ILL. COMP. STAT. 115/1, *et. seq*..

99.    Plaintiff and the Class had an agreement with Defendants at the outset of their employment that they would receive their hourly wage for all time worked for Defendants.

100.    Defendants were at all times aware of its obligations to pay its hourly employees for all times they worked, and are aware of the compensation actually paid to Plaintiff and the Class.

101.    At all relevant times, Plaintiff and the Class regularly worked in excess of forty (40) hours in a workweek.

102.    Defendants failed to pay the Plaintiff and the Class the hourly wages to which they are entitled under the IWPCA for each hour that they worked.

103.    Furthermore, Defendants failed to pay Plaintiff and the Class the proper overtime wages to which they are entitled.

104.    At all relevant times, Defendants regularly and consistently maintained policies and

procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

105.    Defendants' violations of the IWPCA were knowing and willful. Defendants knew or could have determined how long it took for their employees to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiff and the Class for these work activities, but did not.

106.    Accordingly, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to IWPCA as a result of Defendants' failure to pay for all time worked and such premium compensation, as is required under their agreement and Illinois law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on her own behalf and on the behalf of the putative Collective and Class members, request judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.    Designating the named Plaintiff as Representative of the proposed FLSA collective;

c.    Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under the FLSA;

d.    Certifying the proposed Class;

e.    Designating Plaintiff as representatives of the proposed Class;

f.    Appointing Sommers Schwartz, P.C. as Class Counsel;

g.      Declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

h.      Granting judgment in favor of Plaintiff and against Defendants and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

i.      Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

j.      Declaring that Defendants willfully violated the IWPCA and IMWL as set forth above;

k.      For actual damages, statutory damages, or statutory penalties according to proof as set forth in IWPCA and IMWL;

l.      For pre- and post-judgment interest;

m.      For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, IWPCA and IMWL; and

n.      For such other and further relief the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

DATED: November 2, 2021        Respectfully submitted,
SOMMERS SCHWARTZ, P.C.

By:     */s/ Charles R. Ash, IV*
          Charles R. Ash, IV
          SOMMERS SCHWARTZ, P.C.
          One Towne Square, Suite 1700
          Southfield, Michigan 48076
          Telephone:   (248) 355-0300
          Facsimile:   (248) 746-4001

          Trenton R. Kashima (*pro hac vice anticipated*)

22

SOMMERS SCHWARTZ, P.C.
402 West Broadway, Suite 1760
San Diego, California 92101
Telephone: (619) 762-2126
Facsimile: (619) 762-2127

*Counsel for Plaintiff and Putative Class*