IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXA ROBERTS, on behalf of herself and all others similarly situated, *Plaintiff* v. ONE OFF HOSPITALITY GROUP, LTD., PAUL KAHAN, DONNIE MADIA, and EDUARD SEITAN, *Defendants*. | No. 21 C 5868 Judge Virginia M. Kendall |

### MEMORANDUM OPINION AND ORDER

Plaintiff Alexa Roberts alleges in this action that Defendants One Off Hospitality Group, Ltd., Paul Kahan, Donnie Madia, and Eduard Seitan (collectively "Defendants") deprived her and others similarly situated of wages and overtime compensation to which they were entitled. Roberts claims that Defendants violated the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA"). Defendants move to dismiss all claims against Defendant One Off Hospitality, and to dismiss Robert's IWPCA claim against all Defendants. (Dkt. 24). For the reasons given, the Motion is granted in part and denied in part.

### BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The following factual allegations are taken from Robert's First Amended Complaint (Dkt.

1

19) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Defendant One Off Hospitality Group, Ltd. ("One Off") owns and operates several Chicago-area restaurants, including Blackbird, Publican, Big Star, the Violet Hour, and Publican Quality Meats. One Off manages each of these restaurants, including managing staffing, gift card sales, and online food sales. (¶¶13, 46-47). The restaurants owned by One Off often share employees, have common management, employee policies, and compensation practices. (¶48). Defendant Kahan is the executive chef and partner of One Off and was involved in the day-to-day management of the restaurants. Defendant Madia is a managing partner of One Off and was involved in day-to-day management of Roberts and other putative class members, including working on the floor of the restaurants. (¶15). Defendant Seitan is a managing partner of One Off and worked closely with Roberts and other putative class members to direct job tasks. (¶16). Each of the individual defendants, through their involvement in the management of the restaurants, was aware of the wage and hour violations that Roberts alleges. (¶¶13-17, 49).

Roberts was employed as a bartender at Blackbird and Avec restaurants in Chicago from 2017 to July 2020. At the time she was hired, Defendants agreed that Roberts would be paid $11.00/hour, reduced with a tip credit. Over time, that rate increased to $13.50/hour reduced with a tip credit. (FAC ¶¶5-6). She regularly worked more than 40 hours a week. Her job duties included tasks that required her to work either before or after her scheduled shifts. (*Id.* ¶7). Roberts was instructed by Defendants to clock in and out at the times of her scheduled shift to avoid overtime, regardless of the time she actually worked. (¶¶8-9, 50-51). Defendants knew that their employees were performing off-the-clock work outside their scheduled hours and that those employees were not being paid for that work. (*Id.* ¶¶7-9). If Roberts did record her overtime work,

2

she was reprimanded by Defendants for violating internal employment policies. The Defendants were aware that employees were working outside their scheduled shifts and the individual Defendants were often present when employees were working off the clock, and/or instructed the employees to do so. (¶52).

Roberts brought her initial complaint on November 2, 2021, and Defendants moved to dismiss. Roberts subsequently filed the operate First Amended Complaint (Dkt. 19). The First Amended Complaint alleges that Defendants violated the Fair Labor Standards Act ("FLSA") (Count I), the Illinois Minimum Wage Law ("IMWL") (Count II) and the Illinois Wage Payment and Collection Act ("IWPCA") (Count III). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant One Off Hospitality moves to dismiss all claims brought against it, and Defendants collectively move to dismiss Count III.

## LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' " *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [his] favor." *Reynolds v. CB*

*Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

## DISCUSSION

I.     **Count III: Violation of the IWPCA**

The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages. 820 ILCS 115/3. The Act defines "wages" as "compensation owed an employee *by an employer pursuant to an employment contract or agreement* between the 2 parties...." 820 ILCS 115/2 (emphasis added). As such, "to state a claim under the IWPCA, the drivers are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568–69 (7th Cir. 2016); *see also Brand v. Comcast Corp.,* 2013 WL 1499008 at *2 (N.D. Ill. Apr. 11, 2013) (holding that "to state a claim under the IWPCA, [plaintiff] must allege that [defendant] owed him the unpaid wages pursuant to an employment contract or agreement"). Defendants argue that Count III should be dismissed because Roberts has failed to allege sufficient facts to show the existence of an "employment contract or agreement" required to bring an IWPCA claim.

The parties do not dispute that no written employment contract governs this claim. (Dkt. 25 at 5, Dkt. 26 at 4). The question then becomes whether Roberts has alleged the existence of an employment agreement. An agreement need not be express to state an IWPCA claim and can be "entirely implicit." *Chagoya v. City of Chicago*, 992 F.3d 607, 625 (7th Cir. 2021); *see also Landers-Scelfo v. Corp. Off. Sys.*, *Inc.*, 356 Ill.App.3d 1060, 1067-68 (2005). However, it is "not enough to allege the existence of any employment contract or agreement: the [plaintiffs] must

4

allege that existence of a contract or agreement that specifically gives [them] a right to the wages they seek." *Id.*; *see also Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 652 (N.D. Ill. 2020) ("Illinois courts have explained that the concept of an employment agreement under the IWPCA is 'broader than a contract' and 'requires only a manifestation of mutual assent.'") (internal citations omitted).

Defendants argue that Roberts is merely "invoking pre-existing statutory duties" that cannot form the basis of an agreement for purposes of IWPCA liability. This position finds footing in the concept that compliance with the law does not constitute consideration for the formation of a contract. *See, e.g., Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 660 (N.D. Ill. 2012) ("A promise to perform a legal duty that a party is already bound to perform cannot constitute consideration, because in that case the party has not actually promised anything; he has merely given the other party 'an empty bag.'") (citing *Restatement (Second) of Contracts* § 73). The court in *Wharton* noted that an agreement (as opposed to a contract) "does not require a bargained for exchange of consideration. It is thus irrelevant that Comcast offered nothing more than what it was already bound to do."). Defendants' argument "is more applicable to contracts because contracts require considerations, which usually means that parties cannot contract to do things that they were already required to do." *Snell-Jones v. Hertz Corp.*, 2020 WL 1233825 (N.D. Ill. Mar. 13, 2020) ("[N]othing prevents an employer and an employee from mutually assenting to follow the law.")

Here, while it may have been adequate, Roberts has done more than allege that the parties mutually assented to follow the law. She alleges that she was worked as a bartender at Blackbird and agreed with Defendants at the time she was hired that she would be paid $11.00 per hour worked, reduced with a tip credit. She regularly worked at least five days per week, including appropriately two double shifts per week, and regularly worked more than 40 hours per week. (FAC ¶¶5-6). As part of her job, she performed tasks like preparing mixers and fruits for drinks

5

before her scheduled shift, and cleaning and closing tasks after her scheduled shifts. (FAC ¶7). These tasks were required for employees to complete. (FAC ¶¶50-52). Defendants agreed, at the time Roberts and other employees were hired, that the employees would be paid a set hourly rate (in Roberts' case, $11 per hour worked at the time she was hired), which could be reduced by an established tip credit. (FAC ¶49). Any amendment to the terms of employment was accepted by Roberts through her continued employment. (*Id.*). Roberts alleges that Defendants violated the IWPCA by failing to compensate their employees for those hours worked according to their agreement, including not paying Roberts the agreed upon wage for each hour she worked. (FAC ¶¶4, 11). Considering the broad meaning of "agreement" under Illinois law, Roberts has alleged the existence of an agreement that "raises a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. And going further, the FAC adequately alleges that the agreement required Defendants to compensate Roberts for the hours she worked at the agreed upon hourly rate and that they failed to do so. *Compare with, e.g., Brown v. Lululemon Athletica, Inc.*, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011) (rejecting IWPCA claim because plaintiff did not allege that her employers agreed to compensate her for the alleged "ancillary activities" she performed). Unlike *Brown*, Roberts does allege that the tasks she performed before and after her scheduled shifts were part of her job duties, that Defendants expected that she performed these tasks, and that Defendants agreed to pay her $11.00 per hour, reduced by a tip credit, at the time she was hired for the work she performed.

Cases relied on by the Defendants are factually distinct. It is true that the majority view in this district is that a written disclaimer in employee materials can dissolve a claim under the IWPCA. *Mooney v. Wyndham Worldwide Operations, Inc.*, 2014 WL 2959270, at *2 (N.D. Ill. July 1, 2014) (collecting cases). That was the case in *Brand v. Comcast Corp.*, which rejected an

6

IWPCA claim because the plaintiff relied on an employee handbook that disclaimed that it was an agreement for IWPCA purposes. *See Brand,* 2013 WL 1499008 at *8 (N.D. Ill. Apr. 11, 2013). Absent that handbook, the district court found that there were no other allegations in the complaint that described the parameters of a separate agreement. Here, as described above, Roberts has made allegations that there was an employment agreement. Defendants also point to *Pavur v. Ill. Bel. Tel Co.*, a preemption case where the alleged agreement was a "Code of Business Conduct" that disclaimed itself as a contract of employment. *Pavur,* 2016 WL 278886 (N.D. Ill. Jan. 21, 2016); *see also House v. Ill. Bell Tel. Co.*, 148 F. Supp. 3d 701, 705-07 (N.D. Ill. 2015) (code of conduct belied mutual assent between the parties).[1] There is no such disclaimer at issue here.

Taking the allegations as true and drawing reasonable inferences in the nonmovant's favor, as the Court must do at this stage, Roberts has adequately alleged the existence of an agreement to maintain her IWPCA claim.

II. **Defendant One Off Hospitality Group**

Defendant One Off Hospitality Group also moves to be dismissed entirely, arguing that Roberts did not adequately plead that One Off was her employer for purposes of FLSA and IMWL liability. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The IMWL similarly defines "employer" as "any individual, partnership, association, corporation ... or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 Ill. Comp. Stat. 105/3. Courts have generally applied the same analysis to both, so the Court will do so here. *See Condo v. Sysco Corp.*, 1 F.3d 599, 600 n.3 (7th Cir. 1993).

---

[1] In another IWPCA case cited by Defendants, the plaintiffs specifically alleged there was no agreement. *See, e.g., Dougherty v. City of Chicago,* 2018 WL 11196628 (N.D. Ill. Jan. 25, 2018) ("Plaintiffs routinely argue that there were no agreements of the sort.")

To determine if an employment relationship exists, courts focus on the "economic reality" rather than technical concepts. *Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017). Courts in this district have identified relevant factors for this analysis, including "whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Shages v. MDScripts Inc.*, 2019 WL 2327651 at *2 (N.D. Ill. May 31, 2019), citing *Pietrzycki v, Heights Tower Service, Inc.*, 290 F. Supp. 3d 822, 850 (N.D. Ill. Nov. 29, 2017); *see also Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015); *Eduarte v. Sliccily Pizza Pub, Inc.*, 2019 WL 2772528, at *2 (N.D. Ill. July 2, 2019). No one factor is dispositive. *See, e.g., Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121 (N.D. Ill. 2017).

Two or more employers may jointly employ someone for the purpose of the FLSA. *Karr v. Strong Detective Agency, Inc., a Div. of Kane Servs.*, 787 F.2d 1205, 1207 (7th Cir. 1986). For a joint-employer relationship to exist, "each alleged employer must exercise control over the working conditions of the employee." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). Roberts argues that she has pled a joint-employer relationship between One Off and the individual defendants. (Dkt. 26 at 10-13).

Roberts does not make any allegations relating to her work at avec, but does allege that One Off owned and operated the Blackbird restaurant where she was employed. (FAC ¶13). She alleges that One Off "manages each of these restaurants, including staffing" and posts job openings on its website. (*Id.*) That is the extent of Roberts' specific allegations related to One Off and her own employment—the rest of the allegations are either made more generally about One Off

8

unrelated to her employment, or pertain to the individual Defendants, who Roberts allege are "partners" of One Off. (FAC ¶14-16, 32-33).

To proceed under a joint-employer theory, Roberts needed to allege facts showing which companies or entities controlled her working conditions. *See, e.g.*, *Ivery*, 280 F. Supp. 3d at 1129 (joint allegations against three related defendant entities that did not specify which entity hired, paid, or directly supervised plaintiff failed to establish joint-employer relationship under FLSA and IMWL). For example, Roberts must allege that One Off specifically exercised control over *her* working conditions; for instance, that One Off had the power to hire and/or fire her, that One Off supervised and/or controlled her work schedule and conditions of employment, that One Off determined how she was paid, and that One Off maintained employment records. These types of allegations would permit the Court to draw a reasonable inference that One Off controlled Roberts' working conditions, but such allegations are not in the FAC. *See, e.g., Seo v. H Mart Inc.*, 2020 WL 5547913 at *12-14 (N.D. Ill. Sept. 16, 2020) (finding there were insufficient allegations of H Mart's control over the plaintiff as an employee to sustain its FLSA claim); *see also, e.g., Compton v. DuPage Cty Health Dep't*, 426 F.Supp.3d 539, 547 (N.D. Ill. 2019) (identifying the relevant question as whether, under the economic realities test, an employer "exerted enough control" over the working environment to be said to have "employed" the plaintiff.)

One Off argues that these allegations are too conclusory to withstand its motion to dismiss. The Court agrees. Considering the totality of the circumstances, Roberts' allegations are insufficient. For example, Roberts does not make any specific allegations that suggest One Off hired her specifically, that her paychecks came from One Off, or that One Off supervised her work. Failure to make these allegations means that Roberts failed to identify which entity was her primary, direct employer. While her opposition claims that One Off was the primary employer,

9

that allegation and facts supporting it are absent from the FAC, and the allegation that One Off "owes [sic] and controls various entities which operate…Blackbird" suggests that One Off is not engaged in day-to-day management. *See Ivery*, 280 F. Supp. 3d at 1125-1129 ("[Plaintiff] fails to allege even the most basic facts concerning her employment as an [assistant manager]; namely, who hired her, paid her, or directly supervised her work. By omitting such information, the amended complaint fails to identify which of the defendant entities was [Plaintiff]'s primary, direct employer. That deficiency alone is enough to sink her claim.")

Roberts has thus failed to allege sufficient facts to support a plausible inference that One Off was her employer. This is an essential element of each of her claims. *See, e.g., Bohr v. Corrigan Moving Sys.*, 2009 WL 3517748 at *4 (N.D. Ill. Oct. 29, 2009) (granting motion to dismiss where plaintiff failed to adequately plead that defendant was an "employer" as required by the FLSA, IMWL, and IWPCA).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [24] is granted in part and denied in part. Plaintiff is permitted to amend her Complaint to comport with this Opinion, if she is able, within 21 days.

_____
Virginia M. Kendall
United States District Judge

Date: July 6, 2022