IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXA ROBERTS, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*<br><br>v.<br><br>ONE OFF HOSPITALITY GROUP, LTD., PRESTIGE RESTAURANT, INC., TERROIR RESTAURANT, INC., PAUL KAHAN, DONNIE MADIA, and EDUARD SEITAN,<br><br>*Defendants*. | No. 21 C 5868<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Alexa Roberts alleged that the defendants, various restaurants and management personnel, deprived her and others of wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA"). (Dkt. 19). She now moves for collective class certification on her FLSA claim. (Dkt. 42). For the following reasons, the motion is denied. (*Id.*)

**BACKGROUND**

This Court is familiar with the case's facts from its prior two opinions. (*See generally* Dkt. 36, 64). Defendant One Off Hospitality Group, Ltd. ("One Off") owns and operates several Chicago-area restaurants, including Blackbird, Publican, Big Star, the Violet Hour, and Publican Quality Meats. (Dkt. 34 ¶ 14). One Off manages each of these restaurants, including matters related to staffing, gift card sales, and online food sales. (*Id.*) The restaurants owned by One Off often share employees and have common management, employee policies, and compensation practices.

1

(*Id.* ¶ 62). Paul Kahan is the executive chef and partner of One Off. (*Id.* ¶ 15). Donnie Madia is a managing partner of One Off and supervised Roberts. (*Id.* ¶ 16). Eduard Seitan is also a managing partner of One Off and worked closely with Roberts to direct job tasks. (*Id.* ¶ 17).

Roberts was a bartender at Blackbird and Avec in Chicago from 2017 to July 2020. (*Id.* ¶ 6). When she was hired, the defendants agreed to pay Roberts $11.00 per hour, reduced with a tip credit. (*Id.* ¶ 5). Over time, that rate increased to $13.50 per hour. (*Id.*) According to Roberts, the defendants instructed her to clock in and out at the times of her scheduled shift, regardless of the time she actually worked, to avoid overtime. (*Id.* ¶¶ 8–9). The defendants allegedly knew that their employees were performing off-the-clock work outside their scheduled hours and that those employees were not being paid for that work (or paid in gift cards instead of cash). (*Id.*) If Roberts did record her overtime work, the defendants purportedly reprimanded her for violating internal employment policies. (*Id.* ¶ 11).

Roberts sued the defendants for violating the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. (Dkt. 34). She then moved, pursuant to Section 216(b) of the FLSA, for certification of a collective-action lawsuit and accompanying implementation directives. (Dkt. 42). Attached to her motion were her affidavit and her supervisor's affidavit in support. (Dkt. 43-3, 43-4). The defendants opposed the motion for class certification, denying that they refused to pay their employees for all hours worked, and included declarations from over a dozen employees and managers. (Dkt. 55, 56).

## **DISCUSSION**

The FLSA establishes standards for minimum wages and overtime pay. 29 U.S.C. §§ 201 *et seq*. Section 216(b), a remedial provision of the law, allows a wronged employee to recover damages "for and in behalf of himself … and other employees similarly situated." An FMLA

2

"collective action" differs from a traditional class action. *See generally* Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* § 2:16 (2021). A member or members of a class action can sue only if the "class is so numerous," the "questions of law or fact" are sufficiently common, the claims are typical, and the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). In contrast, a plaintiff pursuing a collective action need only show that other employees are "similarly situated." 29 U.S.C. § 216(b). Additionally, a class action employs the so-called "opt-out" regime, whereby every potential member is considered part of the class and bound by the judgment unless the person affirmatively opts out of the suit. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996) (quoting *LaChapelle v. Owens Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975)). FLSA collective actions are "opt-in" actions, meaning that employees must consent to any action to become part of the lawsuit and bound by the judgment. *Id.*

Most courts approach FLSA collective-action certification using a two-step procedure. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020).[1] At step one, the certification stage, "if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law," the court conditionally certifies the lawsuit and permits notices to be distributed to "opt-in plaintiffs." *Id.* (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016)). A "modest factual showing" is a low standard—but not a toothless one. "[M]ere speculation" will not suffice, *Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 224 (3d Cir. 2016), nor will "unsupported

---

[1] *See also Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2020); *Karlo v. Pittsburg Glass Works, LLC*, 849 F.3d 61, 85–86 (3d Cir. 2017); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103–05 (10th Cir. 2001); *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017); *Olmsted v. Residential Plus Mortg. Corp.*, Nos. 08-C-142, 08-C-419, 2008 WL 5157973, at *2 (N.D. Ill. Dec. 9, 2008); *Garcia v. Salmanca Grp., Ltd.*, No. 07-cv-4665, 2008 WL 818532, at *2 (N.D. Ill. Mar. 24, 2008); *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

assertions," *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (quoting *Dybach v. St. of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)). At step two, the decertification stage, the district court assesses "with the benefit of additional factual development … whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Id.* (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016)). Both parties acknowledge that step one is the only matter before this Court.

Here, Roberts has not made a "modest factual showing" that other similarly situated employees were victims of a common unlawful policy. She has produced only her own affidavit and that of her supervisor. (Dkt. 43-3, 43-4). Roberts's declaration focuses on her unique experience, detailing the compensation structure and missed overtime hours. (*See generally* Dkt. 43-3). Critically absent are affidavits from any other similarly situated employees who worked at the defendants' restaurants. Roberts no doubt perceived others to be working long shifts without compensation, but corroborative evidence is lacking. Perhaps these employees worked longer hours without pay—without additional evidence, though, many of these statements amount to "unsupported assertions." *See Myers*, 624 F.3d at 555. The need for additional support is particularly pronounced where, as here, the defendants maintained a facially lawful policy. The relevant manual specified that "[a]t no time may a staff member perform work of any kind off the clock," and any violations of that policy "will result in disciplinary action, up to termination of employment." (Dkt. 56-1, Ex. C at 20). As such, "modest factual support" demands more than the barebones affidavits provided.[2]

The denial of this motion does not, however, extinguish Roberts's chance to pursue a collective action. The issue can, many courts agree, "be revisited after discovery or efforts by the

---

[2] One instructive point: the defendants have offered evidence, in the form of affidavits, that their practices faithfully adhered to the FLSA. They should not, though, confuse the certification stage with the decertification stage or ultimate

named plaintiff to re-define the contours of the proposed collective action." *Halle*, 842 F.3d at 225. Roberts elected to present her motion early in litigation, directly after the resolution of the defendants' motion to dismiss and before she had the opportunity to conduct any fact-finding. The preliminary posture likely hampered her efforts to provide "modest factual support." She, nevertheless, has the chance to try again at a later point.

## CONCLUSION

For these reasons, Roberts's motion for conditional collective-active certification is denied without prejudice. (Dkt. 42).

Date: November 10, 2022

_____
Virginia M. Kendall
United States District Judge

---

merits ruling. The certification stage is an inappropriate forum to consider much of this evidence, in part because discovery has not been completed and in part because these arguments must, consistent with the law, be reserved for decertification. Additionally, the weighing of evidence—which the defendants seem to think must begin now—cannot be done at certification; rather, it must wait until either summary judgment or (more likely) at trial.